Filed 10/31/14  In re J.J. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re J.J., a Person Coming Under the Juvenile Court Law. | |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | C074593 |
| Plaintiff and Respondent, | (Super. Ct. No. J06196) |
| v. | |
| S.H., | |
| Defendant and Appellant. | |

S.H. (mother) appeals following the juvenile court's disposition order placing minor J.J. in foster care and granting reunification services to mother.  (Welf. & Inst.

1

Code, § 395.)[1]  Mother contends:  (1) The juvenile court erred by holding the contested jurisdictional hearing in the absence of mother and her counsel; (2) mother received ineffective assistance of counsel when her attorney failed to appear for the contested jurisdictional hearing, depriving mother of her due process right to confront witnesses and challenge the evidence against her; (3) the juvenile court erred at disposition by ordering out-of-home placement for J.J.  Because mother was deprived of her due process right to a contested jurisdictional hearing, we reverse and remand the matter to the juvenile court to conduct a contested jurisdictional hearing.

FACTUAL AND PROCEDURAL BACKGROUND

San Joaquin County Human Services Agency (the agency) filed a section 300 petition in September 2012, alleging:  Mother had repeatedly physically abused J.J., an adopted eight-year-old boy; mother had reneged on her agreement to participate in voluntary family maintenance services; J.J.'s alleged adoptive father was temporarily residing in England.

The detention report further alleged:  Adult members of mother's family claimed she also abused A.W., a former foster child, and the social workers suspected these charges were well founded.  Asked about her conduct toward J.J., mother laughed, then said:  "I just want to say that I have never left a mark on any of my children *or my adult children for that matter*.  I am very careful."  (Italics added.)  Mother said she had done nothing wrong and called J.J. and A.W. liars.  Although J.J. did not show obvious signs of physical abuse, his demeanor in interviews suggested threats or coaching and his body language was tense and stressed.  Mother had apparently caused him to fear being removed from her care.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

Mother's two adult daughters and her estranged adult sister (also a licensed foster parent) supported the allegations against mother, some of which they had been the first to report. One said mother had "perfected" the technique of hitting children without leaving marks by placing cold towels and ice packs on the injured areas, but if any injury were visible she would keep the children out of school, sometimes locking them in their rooms. Another described mother as a "sociopath" and called mother's home a "toxic environment." However, she believed the maternal grandmother thought mother was a "saint."

At the initial hearing on December 31, 2012, the juvenile court detained the minor and appointed the public defender's office to represent mother.

On January 23, 2013, the juvenile court relieved the public defender's office because mother had retained attorney Sally Stanley. The court set a contested jurisdictional hearing for March 26, 2013.

The jurisdiction report, filed March 19, 2013, alleged mother had Child Protective Service (CPS) referrals dating back to 1994 for physical abuse of her biological children, although none were deemed substantiated.

On March 25, 2013, Stanley filed a "hearing statement" on mother's behalf, disputing the allegations against her and requesting a continuance of the contested jurisdictional hearing until late April or early May for mother's "key witness," a brother who lived in Germany, to appear.

On March 26, 2013, with Stanley appearing telephonically, the juvenile court set the contested jurisdictional hearing for April 29, 2013, and directed the parties to provide witness lists by April 15.

On April 18, 2013, Stanley submitted a list of 31 proposed witnesses and a motion demanding the production of 63 "hearsay declarants" for cross-examination at the contested jurisdictional hearing.

3

On April 29, 2013, the juvenile court called the contested jurisdictional hearing. Neither mother nor Stanley was present.

Attorney Ralph Cingcon stated he was "making an appearance for *Mr. Humphrey* who asked me to make an appearance for him with the understanding that there was going to be a continuance." (Italics added.) Humphrey's name had not previously appeared in this record, but the context indicates he was purporting to represent mother. The court stated, however, Humphrey was not the attorney of record and had never made a general appearance; Stanley remained attorney of record.

Cingcon said he had told mother that Humphrey would not be able to represent her because he did not have specialized training in juvenile dependency, and Humphrey had asked Cingcon that morning to go in and ask for a continuance. The juvenile court denied the request for continuance.

County counsel told the juvenile court Stanley had called him two weeks ago, saying mother had stopped talking to her and she wanted to get off the case. County counsel thought Stanley did not know how to proceed.

The juvenile court stated that at some unspecified time it had asked mother what happened to Stanley, and mother replied: "[S]he wanted too much money and was giving me the run-around." Mother claimed at that time she had hired Humphrey.

The juvenile court excused Cingcon, then stated: "Well, at this point, this is a case that detention was back in December. Goes back to December 31st and [mother] was represented by the Public Defender at that time. And subsequently, after two appearances by the Public Defender, on January 23rd, [Stanley] appeared and made a general appearance, indicated she did have the background ability to handle these cases and handles these cases in Grass Valley. I believe it was Placer County or El Dorado County. And I allowed her to be attorney of record. She had a number of appearances. [¶] We set the matter, I believe, contested on January 23rd or March 26th, at which time

4

it was continued until today's date. The mother was in court and advised of that date. She is not present. [Stanley] is not present. [Stanley] has not been relieved. She is still the attorney of record. The mother is not here. I am prepared to proceed today. Notice has been given. [¶] . . . [¶] There's no good cause not to go forward."

The juvenile court noted it had waived mother's appearance on March 26 and Stanley said then she would inform mother of the new date for the jurisdictional hearing. The court then found the factual allegations of the section 300 petition were true and "mother has waived her rights by her non-appearance after being noticed of today's date." The court set the dispositional hearing for June 12, 2013.

On May 7, 2013, Stanley filed a substitution of attorney form with the juvenile court, purporting to substitute out and to substitute mother in pro se. The form bears the typed date of Stanley's consent to substitution as "April __ 2013," with the month crossed out and "May 6" interlineated by hand.

On May 13, 2013, Stanley wrote to the juvenile court (apparently in response to a letter from the court that is not in the record), asserting she was no longer involved in the case. Stanley cited to a copy of a substitution of attorney form filed with the court on May 13, 2013, signed by mother and herself, copied to all other parties, and purportedly enclosed with her letter. According to Stanley, mother notified her by e-mail on April 14, 2013, that her services would no longer be required. (No such e-mail is in the record.) Stanley added: "I have heard from [Humphrey] twice, confirming his representation of [mother] on both occasions. Like [Humphrey], I have no special qualifications and have taken no classes in order to qualify as a parent's counsel in a dependency action and see no reason why this should be a stumbling block for [Humphrey]. Further, because I am retiring at the end of this year, I sent [mother]'s entire file to her by [F]ederal [E]xpress two or three weeks ago." Stanley could not appear for mother "since she does not want

5

my services and still owes me a great deal of money. If she cannot secure [Humphrey]'s services, she will just have to represent herself."

On May 28, 2013, the juvenile court replied: "I have reviewed your correspondence of May 13, 2013 and must advise you that you have not yet been relieved as attorney of record in the matter of [J.J.] There appear[] to be a number of communications between yourself, [Humphrey] and your client; however, the substitution of attorney has not been accepted by the court and will not be reviewed until our scheduled hearing on June 12, 2013 at 2:00 p.m. in Department No. 16. Both you and your client must be present so the court can properly review the request for substitution of counsel. If you are not present, the court will take appropriate action with the State Bar."

On June 12, 2013, the juvenile court relieved Stanley in her absence and recognized Grayling Williams as mother's new retained counsel. The court continued the dispositional hearing to June 27, 2013.

The disposition report recommended out-of-home placement of J.J. (currently placed with his maternal aunt) and reunification services for mother. Mother said she had filed for legal separation from the alleged father. He said he had no intention of returning to America, but would have taken custody of J.J. if not for immigration issues.

At the dispositional hearing on August 19, 2013, Williams objected to the jurisdictional finding, submitted on the report, and opposed the agency's recommendation. The juvenile court ordered the disposition recommended by the agency.

On October 28, 2013, Williams filed a motion to set aside the jurisdictional finding. (Code Civ. Proc., § 473.) He attached a supporting declaration by Humphrey.

According to Humphrey's declaration, mother retained him on or about March 30, 2013, after discharging Stanley. Because a calendar conflict prevented his appearance at

6

the contested jurisdictional hearing on April 29, 2013, he advised mother she should not appear and he would have a colleague appear on his behalf to obtain a new trial date.

As of April 29, 2013, Humphrey was unaware the juvenile court had not relieved Stanley as attorney of record. He did not recall executing a substitution of attorney form and could not find a copy of such a form in his file. It also appeared Stanley had not filed a motion to be relieved as counsel or to continue the matter.

In any event, it was not certain the case was ready for trial as of April 29, 2013, since Stanley had missed the juvenile court's April 15 deadline to file her witness list. Furthermore, Humphrey was under the impression Stanley had advised mother not to appear.

Under the circumstances, Humphrey believed his advice to mother not to appear was reasonable. Had he known he would not obtain a continuance, however, he would have advised her to appear. Due to his error, she had been deprived of an opportunity for a trial on the merits as to jurisdiction.

On December 19, 2013, the juvenile court denied the motion to set aside the jurisdictional finding because it did not include a declaration from Stanley (who was attorney of record until relieved by the court, whatever Humphrey may have thought) or give any indication of her thinking.

This appeal followed.

### DISCUSSION

Mother contends by not continuing the contested jurisdictional hearing and instead making adverse findings in her absence and in the absence of any competent counsel authorized to represent her, the juvenile court deprived her of due process. Mother also contends Stanley provided ineffective assistance of counsel (IAC) by failing to appear for the hearing, thus depriving mother of her due process right to confront witnesses and contest the evidence against her.

7

The agency does not directly address mother's underlying due process contention. Instead, the agency contends: (1) Mother's IAC claim is improperly before this court because mother should have raised her IAC claim by writ petition; and (2) since mother dismissed competent appointed counsel in favor of retaining private counsel, mother voluntarily waived her statutory right to be represented by appointed counsel and should be precluded from claiming IAC.

We conclude the agency's contentions lack merit. The agency cites no authority holding a claim of IAC at the jurisdictional stage must be raised by writ petition, and we know of none.[2] Claims of jurisdictional error are normally raised on appeal from the disposition, as here. And since mother does not claim she was denied her right to be represented by appointed counsel, the agency's assertion that she cannot be heard to claim IAC because she waived her right to appointed counsel is a red herring.

We also conclude the juvenile court's rulings at the contested jurisdictional hearing, together with Stanley's ineffectiveness, deprived mother of due process. Mother's statements to the agency and Stanley's filings prior to the hearing showed mother disputed jurisdiction and planned to contest the agency's allegations vigorously. Instead, the court found them true without a contest. Although we cannot know whether mother could have obtained a more favorable ruling at a contested jurisdictional hearing, we cannot exclude that possibility on this record.

### *Due Process*

"The federal and state Constitutions guarantee that no state shall deprive any person of life, liberty or property without due process of law. [Citation.] A parent's

---

[2] The agency cites numerous cases that hold a writ petition is a permissible means to raise a claim of IAC at jurisdiction, then jumps to the conclusion that because mother could have filed a writ petition to raise this claim, her failure to do so forfeits the claim. The agency's conclusion does not follow from its premise.

interest in the companionship, care, custody and management of his [or her] children is a compelling one, ranked among the most basic of civil rights. [Citation.]" (*In re Marilyn H.* (1993) 5 Cal.4th 295, 306 (*Marilyn H.*).)

"It is axiomatic that due process guarantees apply to dependency proceedings. (*Santosky v. Kramer* (1982) 455 U.S. 745, 753-754 [71 L.Ed.2d 599, 606]; *Stanley v. Illinois* (1972) 405 U.S. 645, 658 [31 L.Ed.2d 551, 562-563].)" (*Ingrid E. v. Superior Court* (1999) 75 Cal.App.4th 751, 756-757 (*Ingrid E.*).)

"Significant [due process] safeguards have been built into the current dependency scheme. They include representation by counsel to assist parents at every stage of the proceedings (§ 317), notice of all hearings and rights (§§ 307.4, 308, 311, 316, 335-336, 364-366.23) . . . ." (*Marilyn H., supra,* 5 Cal.4th at pp. 307-308.)

"A hearing denotes an opportunity to be heard and to adduce testimony from witnesses. Moreover, parties in civil proceedings have a due process right to cross-examine and confront witnesses. [Citation.]" (*In re James Q.* (2000) 81 Cal.App.4th 255, 263 (*James Q.*).)

"What . . . are the due process attributes of a proper review hearing in the dependency system? Along with the important requirement of providing proper notice of such a hearing, the right to present evidence, and to cross-examine adversarial witnesses, i.e., the right to be heard in a meaningful manner, are the minimum. [Citations.]" (*James Q., supra*, 81 Cal.App.4th at p. 265.)

Although "due process . . . is a flexible concept, whose application depends on the circumstances and the balancing of various factors [citations]" (*Ingrid E., supra*, 75 Cal.App.4th at p. 757), the juvenile court's procedural discretion does not necessarily extend to "denial of the right to actually present evidence and to cross-examine the government's witnesses; i.e., the right to contested hearings." (*Id.* at p. 759.)

Mother vehemently denied the agency's allegations against her. Mother and her counsel (Stanley) sought and were granted a contested jurisdictional hearing. Stanley presented a long list of witnesses she wished to call on mother's behalf and an even longer list of opposing witnesses she wished to cross-examine. There was no evidence before the juvenile court on the jurisdictional hearing date that mother no longer wished to contest jurisdiction. But by going forward in the absence of mother and her attorney of record and determining the uncontested allegations of the section 300 petition afforded grounds for jurisdiction, the court impliedly found, without any supporting evidence, mother had conceded jurisdiction or could not have effectively contested it.

The juvenile court's rulings deprived mother of "the right to actually present evidence and to cross-examine the government's witnesses," the minimum due process guarantees required in a dependency proceeding. (*Ingrid E., supra*, 75 Cal.App.4th at p. 757; accord, *James Q., supra*, 81 Cal.App.4th at p. 265.) We cannot know whether mother could have successfully contested jurisdiction. But even if the court had exercised jurisdiction after a contested hearing, it might conceivably have relied on evidence presented at the hearing to make a dispositional order that did not involve removing the minor from mother's custody. Here, the absence of a contested jurisdictional hearing created the possibility of prejudice to mother. On this record, we cannot conclude the deprivation of due process was harmless.

### *Stanley's Ineffectiveness*

Mother contends in the alternative Stanley's conduct amounted to IAC and caused the deprivation of due process she suffered. We agree.

To win reversal for IAC, a party must show counsel's representation fell below a minimum standard of competence and a more favorable outcome was likely but for counsel's lapses. (*People v. Maury* (2003) 30 Cal.4th 342, 389.) Although IAC will normally not be found on direct appeal when the record does not show the reasons for

10

counsel's conduct, we may conclude counsel was ineffective if there simply could not be a rational tactical purpose for that conduct. (*People v. Jones* (2003) 29 Cal.4th 1229, 1254.)

Stanley neither represented mother at the contested jurisdictional hearing nor took any effectual steps to be relieved as mother's attorney of record before the hearing. Her posthearing communication with the juvenile court showed no good reason for her prehearing lapses. Even the earliest substitution of counsel form Stanley purportedly filed with the court was dated well after the hearing date. Since Stanley, Humphrey, and mother herself all claimed mother had discharged Stanley before the hearing, Stanley's failure to give the court any sort of formal notice at that time is inexplicable and inexcusable.

Furthermore, any attorney, regardless of experience, should know she or he cannot simply fail to appear, without notice to the court, at a contested hearing she or he had requested. In effect, Stanley simply abandoned her client. There could be no rational tactical purpose for such conduct, which fell below any conceivable standard of competence.

For the reasons given above, we conclude Stanley's ineffective assistance caused prejudice to mother. The evidence presented in support of the jurisdictional and dispositional orders the juvenile court made appears weighty, but we cannot tell whether the court would have made the same orders if mother had been able to present opposing evidence and to cross-examine the witnesses. If competently represented by counsel at a contested jurisdictional hearing, mother might have been able to show grounds why the juvenile court should not exercise jurisdiction, or why, even if it did so, it might have allowed mother to retain custody at disposition.

11

DISPOSITION

The juvenile court's jurisdictional and dispositional orders are vacated and the matter is remanded to the court with directions to conduct a contested jurisdictional hearing.  The minor is to remain in protective detention.

      HOCH    , J.

We concur:

     RAYE   , P. J.

     ROBIE   , J.

12